UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

RICKY JOSEPH HOFFMAN, a/k/a, )
JOE HOFFMAN )
  )
        Plaintiff, ) No. 4:14 CV 1558 DDN
  )
  v. )
  )
NTW, LLC, d/b/a NATIONAL TIRE & )
BATTERY, )
  )
        Defendant. )

## MEMORANDUM AND ORDER

This action is before the court on the motions of defendant NTW, LLC to strike plaintiff's affidavit (Doc. 72) and for summary judgment (Doc. 73). The court heard oral arguments on March 11, 2016.

## I. PLAINTIFF'S CLAIMS

According to plaintiff's first amended complaint, the following events occurred. On September 1, 2011, plaintiff visited a National Tire and Battery store in St. Charles, Missouri, owned and operated by NTW. NTW is a Delaware corporation and plaintiff is a resident of Missouri. While in the store, plaintiff slipped and fell on a wet floor due to the dangerous condition of the floor and the negligence of defendant's employees. Plaintiff is seeking to recover substantial damages.

## II. MOTION TO STRIKE

Defendant's motion to strike plaintiff's affidavit (Doc. 69-1) under Fed. R. Civ. P. 56(e)(4) directly affects the court's determination of non-disputed facts on the motion for summary judgment. Therefore, it will be addressed first. Defendant argues that plaintiff's summary judgment affidavit is contrary to his previously taken deposition and is submitted in an improper attempt to create disputed material facts where there otherwise would be none.

Plaintiff counters that his affidavit merely clarifies and elaborates on his previous deposition, and therefore is permitted.

A. <u>Standard of Law</u>

On a motion for summary judgment, parties must support their factual assertions with evidence from the record, including affidavits or depositions. Fed. R. Civ. P. 56(c)(1)(A). The court must look to whether the affidavit of an already deposed person merely restates, elaborates on, or contradicts the previously taken deposition. <u>Popoalii v. Corr. Med. Servs.</u>, 512 F.3d 488, 498 (8th Cir. 2008). If it merely restates or elaborates previously given deposition testimony, the court should consider it. <u>Id.</u> However, if it contradicts a previously given deposition, it will only be admitted "when the prior deposition testimony shows confusion, and the subsequent affidavit helps explain the contradiction." <u>Id.</u> The Eighth Circuit has held that "[i]f testimony under oath . . . can be abandoned many months later by the filing of an affidavit, probably no cases would be appropriate for summary judgment. A party should not be allowed to create issues of credibility by contradicting his own earlier testimony." <u>Id.</u> (quoting <u>Camfield Tires, Inc. v. Micheline Tire Corp.</u>, 719 F.2d 1361, 1365 (8th Cir. 1983)).

In <u>City of St. Joseph, Missouri v. Southwestern Bell Telephone</u>, 439 F.3d 368, 475 (8th Cir. 2006), the district court struck an affidavit for several contradictions even though the plaintiff argued that he was merely clarifying answers. The court's test was whether each statement in the affidavit could stand side-by-side with the deposition's statements without them being inconsistent with one another. <u>See id.</u> The Eighth Circuit reversed a district court's decision to strike an affidavit when it "sought to merely clarify [the] previously unclear and ambiguous testimony and place it in a context evident from the deposition transcript." <u>Taylor v. Cottrell, Inc.</u>, 795 F.3d 813, 818–19 (8th Cir. 2015). In <u>Taylor</u> a doctor used her affidavit to explain the meanings of certain terms used in a contract and in her deposition. <u>Id.</u> The Eighth Circuit held that the doctor did not contradict, but merely elaborated and explained the circumstances under which she would be paid and by whom; these types of explanations and clarifications were permissible. <u>Id.</u> at 819.

In this case, defendant points to three instances where it argues plaintiff materially changed his position between his deposition and his summary judgment affidavit. These instances relate to plaintiff's claim of slipping and falling on the floor of defendant's store's restroom.

B. <u>Discussion</u>

i. When plaintiff noticed condition of floor

The first instance defendant argues plaintiff changed his testimony relates to his location when he first noticed the restroom floor's condition. In his deposition, plaintiff testified in relevant part as follows:

> Q: So you go up and you use the restroom. What, if anything, happens while you're in the restroom?
>
> A: [RICKY HOFFMAN]: Well, I remember as the -- I walked in, as the door was closing I saw the water -- or wet floor everywhere. Not just like it just got done mopping. It was -- it was a wet floor. I remember as the door was closing I looked back and there was a sign that was leaning against the wall behind the door that said Wet Floor. Not that it clearly was used. And I remember kind of laughing to myself saying, well, that's an appropriate place for that sign. And I carefully walked to the toilet and that part went fine. The way out didn't.
>
> Q: All right. So I want to make sure I understand you. You noticed when you walked in -- into the bathroom you noticed that there was water everywhere is what you said, right?
>
> A: All over the floor.
>
> Q: And that you understood that it wasn't the type of water that you saw from someone mopping, it was -- it looked like it had been spilled or something like that?
>
> A: Something like that.

(Doc. 64-1, Pl.'s Dep. 22:13–23:8.)

> Q: Did you have any difficulty walking once you reached inside the bathroom, to the toilet to use the bathroom?
>
> A: I was being careful because I didn't want to splash anything on myself, and I also -- well, I didn't want to slip. I had -- no, I think I made it to the toilet fine.

(Id. 23:21–24:2.)

In his affidavit in opposition to summary judgment, plaintiff states,

8. After I entered the restroom and after the door closed behind me, I observed that there was water on the floor of the restroom.

9. I had taken about three or four steps into the restroom and was about in the middle between the door and the toilet when I first observed the water on the floor.

10. I was already standing in the water when I first realized the wet conditions.

11. I looked behind me towards to door and noticed a "Wet Floor" sign leaning against the wall behind the door.

12. The "Wet Floor" sign could not be seen by anyone until they entered the bathroom and shut the door.

(Doc. 69-1 ¶¶ 8–12.)

Furthermore, plaintiff attached a picture indicating where he now asserts the water was. (Doc. 69-1, Ex. A.) This picture indicates that the water was located in a small area on the floor in front of and under the sink, near the floor drain. (Id.)

Plaintiff's deposition testimony and subsequent affidavit are inconsistent and contradictory. The deposition described the situation inside the restroom as "wet floor everywhere" and "[a]ll over the floor." His affidavit states that only a small location, indicated on the picture—at most four or five tiles in the center of the bathroom. Additionally, plaintiff stated in the deposition he noticed the water as he walked in. He said, "I walked in, as the door was closing I saw the water -- or wet floor everywhere." His affidavit indicates that plaintiff was "three or four steps into the restroom" when he "first observed the water on the floor." Further, plaintiff's affidavit states, "I was already standing in the water when I first realized the wet conditions." These are material changes to plaintiff's deposition testimony. To allow plaintiff to change his deposition testimony months after giving it would effectively limit the summary judgment process by allowing him to create issues of material fact that would not otherwise exist. Popoalii, 512 F.3d at 498. Because they contradict his prior deposition testimony, paragraphs eight through fourteen and exhibit A of the affidavit are stricken and will not be considered for purposes of summary judgment.

### ii. The water's origin based upon time interval

Second, defendant argues that the time interval between the last employee left the restroom and plaintiff entered the restroom has been significantly shortened by his affidavit. Plaintiff's deposition states in relevant part:

> Q: And so you saw the younger guy, the assistant manager who you came to find out -- I'm sorry. Let me start over.
> The person that you understood to be the assistant manager then went into a bathroom to refill --
>
> A: Yes
>
> Q: -- a coffee pot?
>
> A: Yes
>
> Q: And by that he took an empty canister?
>
> A: The empty pot.
>
> Q: An empty pot?
>
> A: Yeah.
>
> Q: Went in and filled up the pot?
>
> A: Yes.
>
> Q: With fresh water?
>
> A: Correct.
>
> Q: Did you see him do that?
>
> A: I saw him walk into the room. I wasn't specifically paying attention to him, no.
>
> Q: Okay. And then he came out and did you see him make a pot of coffee?
>
> A: I didn't watch that closely.

(Doc. 64-1, Pl.'s Dep. 18:18–19:15.)

> Q: All right. Then what did you do? What do you remember next?
>
> A: I remember – and it probably was immediately after that, the more I think about it, because I had to use the restroom. I guess it was the coffee. Went into the restroom. Yeah. I guess that's at what point I went to the restroom.

Q: Approximately how long after the coffee pot was made -- the coffee was made did you use the restroom?

A: Shortly. I don't know how much longer.

Q: Are we talking two minutes? Are we talking 20 minutes?

A: I would say less than 20. It could be more than five, in that range. I don't know how long I was in there.

Q: You went up to use the restroom. Was this a unisex bathroom?

A: I don't know if it was labeled that or not. I know that it was a single -- a single person restroom. There was no stalls, it was just a toilet and a sink. But I'm not sure if there was a woman's restroom somewhere else or what.

Q: And did you watch to see if anyone went in and out of that bathroom while you were there?

A: Other than a manager getting the coffee that's the only person I saw. Or assistant manager.

Q: While you were waiting, is that something you were paying attention to? Or were you paying attention to other things?

A: No, I was just killing time.

Q: I'm sure they had a TV going.

A: I believe there was a TV and there were magazines.

Q: 2011, even then we were on our phones and internet, right?

A: I don't know if I had a Smart Phone yet or not then. I don't think -- I don't know if I had anything to play with on a phone yet.

Q: Okay. But keeping track of who was using the bathroom, it wasn't something that you were concerned with at the time?

A: No, it never dawned on me to watch who is coming in and out of it.

(Id. 20:15–22:8.)

Q: Do you know how long the water had been on the floor?

A: I have no idea.

Q: Do you know how the water got on the floor?

A: I do not.

>   Q:     Do you have some belief that it had to do with filling up the coffee pot?
>
>   A:     I -- I -- I don't have any beliefs on it at all.  I never really correlated the two.

(Id. 30:4–12.)

Plaintiff's affidavit states,

> 5.    Shortly after the employee returned from the restroom with the coffee pot filled with water, I needed to go to the bathroom.  I got up from the chair I had been sitting on in the lobby to use the men's restroom.
>
> 6.    I entered the men's restroom approximately 5 minutes after the employee exited the men's restroom with the coffee pot full of water to make coffee.
>
> 7.    I did not observe anyone else go into the men's restroom between the time that the employee exited the restroom and when I entered.

(Doc. 69-1 ¶¶ 5–7.)   Plaintiff's affidavit also states that he "saw no person enter the restroom after the employee and I believe the condition of the restroom when the employee was in there was the same, or approximately the same, as when I entered."  (Id. ¶ 22.)

Plaintiff's deposition testimony differs from his affidavit regarding time interval between when the employee came out with the coffee pot and when plaintiff entered the restroom.  In his deposition plaintiff loosely estimated that between five and twenty minutes passed between the time the employee came out with the coffee pot and plaintiff entered.  Plaintiff's subsequent affidavit states he went into the restroom "approximately 5 minutes" later.  While this change now makes it perhaps more likely that defendant's employee caused the floor's wet condition, the court concludes that the affidavit is a clarification of the time interval.  Both the deposition testimony and the affidavit are expressly approximations.  The motion to strike the affidavit in this regard is denied.

Plaintiff's affidavit also states with certainty that he did not see anyone else enter the restroom between the time the employee left with the coffee pot and when he entered.  This statement contradicts his lack of certainty in his deposition about whether other people entered the restroom after the employee left.  He testified in this deposition that he was not paying attention to the comings and goings of the restroom.  (Compare Doc. 69-1 ¶¶ 7, 22 with Pl.'s Dep. 21:13–22:8.)   Thus, the motion to strike is granted as to paragraph 7 of plaintiff's affidavit.

Finally, in his deposition plaintiff never correlated the actions of the employee with the coffee pot with the wet floor. (Doc. 64-1, Pl.'s Dep. 30: 9–12.). His affidavit changed this to a definite opinion about the origin of the water on the floor of the restroom, "I believe the condition of the restroom when the employee was in there was the same, or approximately the same, as when I entered." Paragraph 22 of plaintiff's affidavit plainly contradicts his deposition and is stricken for purposes of the motion for summary judgment.

iii. Type of liquid on the restroom's floor

Finally, defendant argues that plaintiff has changed his testimony to indicate that oily or soapy cleaner and solvents were on the floor, instead of mere water. Defendant never explicitly asked during plaintiff's deposition what types of substances were on the floor, but plaintiff repeatedly stated "water" when describing the floor.

> A: Well, I remember as the -- I walked in, as the door was closing I saw the water -- or wet floor everywhere. Not just like it just got done mopping. It was -- it was a wet floor. I remember as the door was closing I looked back and there was a sign that was leaning against the wall behind the door that said Wet Floor. Not that it clearly was used. And I remember kind of laughing to myself saying, well, that's an appropriate place for that sign. And I carefully walked to the toilet and that part went fine. The way out didn't.
>
> Q: All right. So I want to make sure I understand you. You noticed when you walked in -- into the bathroom you noticed that there was water everywhere is what you said, right?
>
> A: All over the floor.
>
> Q: And that you understood that it wasn't the type of water that you saw from someone mopping, it was -- it looked like it had been spilled or something like that?
>
> A: Something like that.

(Doc. 64-1, Pl.'s Dep. 22:13–23:8.)

In defendant's interrogatories, however, plaintiff was specifically asked about "foreign substances":

> 23. Identify any foreign substance, liquid, or object in the area where you claim to have fallen.

ANSWER: Unknown what all foreign substances, liquids or objects may have been in the area where I fell but I do know there was water.

(Doc. 73, Pl.'s Answers to Def.'s First Set of Interrog. 9.)

Plaintiff's affidavit states, "17.    I observed bottles of cleaning products on the floor near the sink with no lids. 18.    The floor in the area near the sink had an oily or soapy surface, in addition to water, and was more slippery than the rest of the bathroom surface." (Doc. 69-1 ¶¶ 17–18.)

Plaintiff's affidavit contradicts his prior interrogatory answers about the material on the floor that caused him to fall. He has changed his deposition statement of not knowing if there were any foreign substances to his seeing bottles of soap and cleaners in the area. Additionally, plaintiff was asked in his deposition "you noticed that there was <u>water</u> everywhere is what you said, right?" To which plaintiff responded, "[a]ll over the floor." "And that you understood that it wasn't the type of <u>water</u> that you saw from someone mopping . . ." Plaintiff never mentioned soap or cleaner around the sink until the post-discovery affidavit. (<u>Compare</u> Pl.'s Dep., and Pl.'s Answers to Def.'s First Set of Interrog. <u>with</u> Doc. 69-1.) Plaintiff's affidavit clearly contradicts the statements he provided through interrogatories and his deposition. Therefore paragraphs 17 and 18 of his affidavit are stricken and will not be considered for purposes of the motion for summary judgment.

### III.  SUMMARY JUDGMENT STANDARD

Courts must grant summary judgment when the pleadings and the proffered evidence demonstrate that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." <u>Scott v. Harris</u>, 550 U.S. 372, 381 (2007) (internal citation omitted). A fact is "material" if it could affect the ultimate disposition of the case, and a factual dispute is "genuine" if there is substantial evidence to support a reasonable jury verdict in favor of the nonmoving party. <u>Rademacher v. HBE Corp.</u>, 645 F.3d 1005, 1010

(8th Cir. 2011). Stated another way, the party defending the motion must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322.

The court must view the evidence in the light most favorable to the nonmoving party and accord it the benefit of all reasonable inferences. Scott, 550 U.S. at 379. The nonmoving party must proffer "affirmative evidence in order to defeat a properly supported motion for summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986); Iverson v. Johnson Gas Appliance Co., 172 F.3d 524, 530 (8th Cir. 1999). If the nonmoving party fails to proffer substantial evidence of an essential element of a claim, summary judgment is appropriate on that claim because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323; St. Jude Med., Inc. v. Lifecare Intern., Inc., 250 F.3d 587, 595 (8th Cir. 2001).

## IV. FACTUAL BACKGROUND

The proffered admissible evidence submitted on the motions for summary judgment indicates that the following facts are without genuine dispute.

Plaintiff went to National Tire & Battery (NTB) in St. Charles, Missouri on September 1, 2011, to have a tire fixed or repaired at approximately 10:00 am. After a customer at NTB requested coffee, plaintiff saw that an NTB employee went into the bathroom and filled the coffee pot with water in order to make more coffee. (Doc. 64 ¶¶ 1–2; Doc. 69 at 1, 4.) Plaintiff went into the bathroom between five and twenty minutes after the employee with the coffee pot came out. (Doc. 64-1 at 20:22–21:5.) During those five to twenty minutes, plaintiff was not paying close attention to who came in and out of the restroom. (Id. at 21:13–22:8.)

Plaintiff went to the restroom and saw a large amount of water when he entered the restroom, as the door was closing. (Id. at 22:10–23:20.) Plaintiff did not know how long the water was present or from where it came and he did not correlate the water on the floor to the NTB employee who made the coffee. (Id. at 30:1–15.) Plaintiff continued into the restroom despite seeing the water. (Id. at 22:10–23, 23:21–24:15.) After using the restroom, plaintiff

slipped but caught himself on the sink and heard a "pop" in his right knee, but never actually fell on the ground. (Doc. 64 ¶¶ 11–12; Doc. 69 at 3.)

Upon exiting the restroom, plaintiff was approached by NTB employees who asked if he was alright. Plaintiff told the employees to "get the blank away from me. Leave me alone." After the incident, plaintiff paid for his tire and left. (Doc. 64 ¶¶ 13–15; Doc. 69 at 4.)

## **V. DISCUSSION**

Plaintiff alleges a claim of negligence against defendant for the condition of the bathroom floor on which he, an invitee into the store, slipped. (Doc. 11 at 2–3.) First defendant argues two affirmative defenses: (1) assumption of the risk by plaintiff, and (2) the alleged dangerous condition was open, obvious, and known to the plaintiff. (Doc. 63 ¶ 1.) Alternatively, defendant argues plaintiff cannot show NTW had actual or constructive notice of the defective condition; plaintiff cannot show that NTW did not meet the ordinary standard of care; and, plaintiff's own actions break the causal chain of injury. (Doc. 63 ¶¶ 2, 3.)

The defendant is liable to the plaintiff, as an invitee, for negligence only if the defendant:

(1) knew or by the exercise of reasonable care would have discovered the condition, and should have realized that it involved an unreasonable risk of harm to such invitees;

(2) should have expected that invitees would not have discovered or realized the danger or would have failed to protect themselves against it; and,

(3) failed to exercise reasonable care to protect invitees against the danger.

Holzhausen v. Bi-State Dev. Agency, 414 S.W.3d 488, 494 (Mo. Ct. App. 2013) (quoting Harris v. Niehaus, 857 S.W.2d 222, 225–26 (Mo. 1993) (en banc)).

A.  Assumption of the Risk

Defendant argues that plaintiff's claim must fail as a matter of law because the undisputed facts establish that plaintiff assumed the risk of his falling before he allegedly fell. Assumption of the risk is an affirmative defense and defendant must prove that plaintiff knew the risk was present, understood the nature of the risk, and decided to voluntarily and freely incur the risk. See Strang v. Deere & Co., 796 S.W.2d 908, 916 (Mo. Ct. App. 1990). There are three

types of assumption of the risk: express, implied primary, and implied secondary. See Coomer v. Kansas City Royas Baseball Corp., 437 S.W.3d 184, 193 (Mo. 2014) (en banc). Express assumption of the risk means a plaintiff has "expressly consented to assume a known and understood risk". Id. Implied primary assumption of the risk is when the plaintiff "implicitly consented (based on his conduct and surrounding circumstances) to assume a known and understood risk that was not created by defendant's own negligence." Id. Both express and implied primary assumption of the risk are complete bars to recovery.

However, implied secondary assumption of the risk is not a complete bar to recovery. It occurs when a plaintiff "implicitly consented (based on his conduct and surrounding circumstances) to assume a known and understood risk that resulted from the defendant's own negligence, provided that the plaintiff acted unreasonably in doing so." Id. "Gufstafson rejects any further application of 'implied secondary assumption of the risk.'" Id. After Missouri's adoption of comparative fault in Gufstafson v. Benda, 661 S.W.2d 11 (Mo. 1983) (en banc), the types of assumption of the risk defenses remaining are express and implied primary. Id.

NTW argues that this is a case of implied primary assumption of the risk. However, applying that doctrine would require the court to find that defendant had no duty to protect the plaintiff from this type of harm. See Ivey v. Nicholson-McBride, 336 S.W.3d 155, 157–58 (Mo. Ct. App. 2011). Stores have a duty to protect invitees from the risk of a slip and fall in water on the floor, because it is a foreseeable risk. See e.g, Hople v. Wal-Mart Stores, 219 F.3d 823, 824–25 (8th Cir. 2000) (water on the floor due to melted snow); Spencer v. Kroger Co., 941 F.2d 699, 703 (8th Cir. 1991) (floor cleaner); Love v. Hardee's Food Sys., Inc., 16 S.W.3d 739, 743 (Mo. Ct. App. 2000) (water on the restroom floor). This is a case of implied secondary assumption of the risk, which is now covered under Missouri's adoption of comparative fault and requires a trier of fact to compare any fault on the part of both the plaintiff and the defendant. C.f. Coomer, 437 S.W.3d at 193.

B.   Open and Obvious Danger

There should be no liability, if "the dangerous condition is so open and obvious that the invitee should reasonably be expected to discover it and realize the danger, . . ., unless the

[defendant] should anticipate the harm despite such knowledge and obviousness." Holzhausen, 414 S.W.3d at 494 (quoting Harris, 857 S.W.2d at 226). The defendant should expect that "invitees will exercise ordinary perception, intelligence, and judgment to discover open and obvious conditions, appreciate the risk these conditions present, and take the minimal steps necessary to avert a tragedy." Holzhausen, 414 S.W.3d at 494–95 (quoting Harris, 857 S.W.2d at 226).

The decision of whether a condition is so openly and obviously dangerous that a reasonably prudent person would not attempt it is typically left to the trier of fact. Scheerer v. Hardee's Food Sys., Inc., 92 F.3d 702, 709–10 (8th Cir. 1996); Underwood v. Target Corp., No. 1:12 CV 35 LMB, 2013 WL 6801260, at *3 (E.D. Mo. Dec. 23, 2013), ("[i]n determining whether a dangerous condition is open and obvious as a matter of law, courts engage in an extremely fact intensive analysis."). However, if the facts and circumstances are so one-sided, the court may conclude, as a matter of law, that the condition was so open and obvious that the plaintiff could have protected himself from the danger. Scheerer, 92 F.3d at 709–10. A danger is obvious if "an invitee would reasonably be expected to realize the danger associated with the condition. Holzhausen, 414 S.W.3d at 495. A danger is known to an invitee if the invitee should have reasonably seen the condition as a matter of law, not whether he actually knew of the condition. See id.

Finally, liability or lack thereof cannot be premised on the plaintiff's actual knowledge of the danger. Underwood, 2013 WL 6801260, at *4 (a short empty advertising stand at the end of an aisle was not open and obvious although plaintiff may have gone around it only five minutes before falling over it); Tucker v. Wal-Mart Stores, Inc., No. 1:06 CV 19 CAS, 2007 WL 1306461, at *1 (E.D. Mo. May 2, 2007) (pallets full of merchandise in the aisle was not open and obvious although plaintiff admitted she saw them); Smith v. Callaway Bank, 359 S.W.3d 545, 548 (Mo. Ct. App. 2012) (existence of business owner's duty to protect against a dangerous condition is not determined by the business invitee's knowledge of the condition). A possessor still has a duty to anticipate that an invitee may still attempt an action despite the risk. Hellman v. Droege's Super Mkt., Inc., 943 S.W.2d 655, 659 (Mo. 1997) (en banc). The jury has a duty to assess the proportionate liability, if any, of the parties. Id.

The admission that plaintiff actually recognized the danger[1] does not weigh on the court's determination, as a matter of law, if the danger was open and obvious. See Smith, 39 S.W.3d at 548. This is not like Holzhausen where the danger was much more dangerous and obvious—a twenty-to-thirty foot drop onto Metrolink tracks separated from Spruce Street by at least two metal pipes. 414 S.W.3d at 491. Water on a bathroom floor is a danger that an invitee might reasonably risk attempting in order to use the toilet. Even if the court finds the danger was open and obvious, a jury might find that the factual circumstances were such that the defendant reasonably anticipated that an invitee would still attempt to use the restroom, irrespective of the danger. Hellman, 943 S.W.3d at 659.

C.  Constructive Notice and Standard of Care

In order to show constructive or actual notice of a dangerous condition plaintiff must show that the condition "existed for a sufficient length of time or the facts must be such that the defendant should have reasonably known its presence." Love, 16 S.W.3d at 742 (quoting Elmore v. Wal-Mart Stores, Inc., 812 S.W.2d 178, 180 (Mo. Ct. App. 1991)). No longer is the amount of time the primary concern when evaluating notice. See Love, 16 S.W.3d at 743. Rather, the court looks to the defendant's method of operation and whether it indicates that the store's employees had an opportunity to observe the hazard. Spencer, 941 F.2d at 702. The court should look and decide whether "the hazard results from a product of the store or some other device or condition. Love, 16 S.W.3d at 743 (quoting Spencer, 941 F.2d at 702).

The alleged fact pattern of plaintiff's case is analogous to the situation in Love where the Missouri Court of Appeals found that water being splashed and spilt on a store's bathroom, by customers or employees, is a foreseeable risk that requires a store owner to use due care to guard against danger from water on the floor. Love, 16 S.W.3d at 742; see also Hople, 219 F.3d at 824–25. From the evidence adduced so far there are questions as to when the water appeared on the floor and the origin of the water. (See Pl.'s Dep. 18:18–19:15; 20:15–22:8; 30:4–12.)

---

[1] "Well, I remember as the -- I walked in, as the door was closing I saw the water -- or wet floor everywhere. Not just like it just got done mopping. It was -- it was a wet floor." (Pl.'s Dep. 22:13–16.)

Therefore, whether or not NTW had either constructive or actual notice of the water's presence is a matter for the trier of fact to decide. 16 S.W.3d at 743–44.

D.  Proximate Cause of Injury

"The simplest test for proximate cause is whether the facts show that the injury would not have occurred in the absence of the negligent act." Vintila v. Drassen, 52 S.W.3d 28, 39 (Mo. Ct. App. 2001). Here, however, defendant's argument is simply another way to restate that plaintiff assumed the risk and there was an open and obvious danger. Defendant argues that plaintiff knew of the condition—open and obvious, and continued anyway—assuming of the risk, thereby breaking the chain of causation. Defendant argues but for plaintiff's choices this accident would not have happened. That is the same essential argument as assumption of the risk and knowledge of an open and obvious danger. Therefore, the court will rest on its previous analysis regarding an assumption of the risk and open and obvious danger as matters for the trier of fact to assess.

## VI.  CONCLUSION

For the reasons stated above,

**IT IS HEREBY ORDERED** the defendant's motion to strike (Doc. 72) plaintiff's affidavit (Doc. 69-1) is sustained in part and denied in part.

**IT IS FURTHER ORDERED** that defendant's motion for summary judgment (Doc. 63) is denied.

**IT IS FURTHER ORDERED** this case is set for a **JURY TRIAL** on **Monday, July 25, 2016 at 9:00 a.m.**

**IT IS FURTHER ORDERED** the final pretrial conference is set for **July 15, 2016 at 10:00 a.m.**

**IT IS FURTHER ORDERED** final pretrial conference compliance materials be submitted no later than **July 5, 2016.**

　　　　　　　　　　　　　　　　　　　　/S/   David D. Noce
　　　　　　　　　　　　　　　　　　**UNITED STATES MAGISTRATE JUDGE**

Signed on March 16, 2016.